EARL D. PORTER, Appellee, v. MAPLETON ELECTRIC LIGHT COMPANY et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Casual Employment. A "purely casual" employment results, within the meaning of the Workmen's Compensation Act, from the act of one employer in *loaning* one of his regular employees to another person for a few hours of service for the latter, and especially so when the employee, in acquiescing in such loaning of himself, entered upon said service without definite knowledge of the work required, and without any arrangement as to wages. (Sec. 2477-m, Code Supp., 1913.)

*Appeal from Monona District Court.*—W. G. SEARS, Judge.

JUNE 25, 1921.

ACTION to recover damages for personal injuries caused by the alleged negligence of the defendant company while plaintiff was in its employ. Defendant pleaded that both plaintiff and defendant were working under the terms and provisions of the Workmen's Compensation Law of Iowa, and that, therefore, the district court had no jurisdiction of the parties or the subject-matter. This defense was overruled, and cause submitted to the jury. Verdict finding for plaintiff in the sum of $4,500, and judgment was entered accordingly. Defendants appeal.—*Affirmed.*

*John J. Nangle* and *Miles W. Newby,* for appellants.

*B. H. Morrison* and *Prichard & Prichard,* for appellee.

DE GRAFF, J.—Plaintiff was regularly and permanently employed, installing telephones and doing line work for the New State Telephone Company at Mapleton, Iowa, and had been in such employment for 18 months prior to his injury. On the day in question, through arrangements made between the manager of the telephone company and the manager of the defendant electric light company, plaintiff had been "loaned" or transferred for special service from the former to the latter company, to assist in resetting a few light poles, in order that certain curbing and paving construction then in progress at Mapleton would not be delayed. The work to which plaintiff had been assigned was temporary, and contemplated about three hours' time. Nothing was said to him, when he was transferred, as to the length of time he would be so employed, what work he was to do, or his wages. He made no arrangements personally with the defendant's manager, but received his instructions from the said manager after "he got on the job." Plaintiff had no prior employment with the defendant company, had never handled wires charged with electricity, and possessed very little knowledge concerning same, although he was an experienced telephone lineman. Before climbing the pole in question to cut the wires, he asked defendant's manager, who was personally supervising the work, whether the wires carried any "juice," to which question plaintiff received a negative answer. In cutting the second wire, which proved to be "alive," he was severely and painfully burned. The material facts in evidence are not in controversy, and plaintiff's allegations of negligence are clearly established.

It is contended that the district court had no jurisdiction of the parties or the subject-matter of this suit, and that the recoverable damage is within the purview of the provisions and terms of the Workmen's Compensation Law of Iowa. This claim is predicated on the proposition that the defendant company had accepted the terms of said statute, and that plaintiff had not rejected its terms prior to his injury. If this contention is sustainable, plaintiff is confined to the remedy provided by the statute. Section 2477-m, Code Supplement, 1913. This is the primary question on this appeal, and the crux of the case.

The term "workman," under this law, means "any person who has entered into the employment of, or works under con-

tract of service, express or implied, or apprenticeship for an employer, except a person whose employment is purely casual or not for the purpose of the employer's trade or business * * * ." Section 2477-m16, Code Supplement, 1913, as amended by Chapter 270, Section 10, Acts of the Thirty-seventh General Assembly.

Was the employment of plaintiff, under the facts of this case, "purely casual?" If it was, then it is wholly immaterial whether or not his employment was "for the purpose of the employer's trade or business."

This case presents a question of legal definition, and the application of such definition to the facts. To define a term is to state its connotation or to enumerate the attributes which it implies, and it must take account of the whole class to which it belongs, and nothing but the class. A definition, then, is such a description of the thing defined, including all essential elements and excluding all nonessential, as to distinguish it from all other things and classes. To illustrate: A man is a matured male biped with a double curve in his backbone. This is an exact definition, unless it can be shown that some other species of animal "not man" is included therein, or some species of animal called "man" is excluded therefrom.

Not all words can be defined with mathematical nicety, and we appreciate that, in construing and defining the terms of the statute in question, "the court is bound, not to a narrow technical construction, but rather to a broad and liberal construction, to make effectual the very purposes for which the law was passed." *Bidwell Coal Co. v. Davidson*, 187 Iowa 809. This does not imply that the words of the statute shall not be ascribed their ordinary meaning and signification, or that a strained construction shall be given, to meet the exigencies of a particular case. It is quite evident that the legislature intended a well-defined meaning of the word "casual," and that that meaning is its ordinary signification. This word is in common use, and its meaning is well understood. What is that meaning? It is: Occasional; incidental; happening at uncertain times; not stated or regular. Its antonyms are: Regular; systematic; periodic and certain. *Bedard v. Sweinhart*, 186 Iowa 655; 3 Words and Phrases (1st Series) 2369, 2370.

A casual employee or workman is one who has entered the employment of another, to render a particular service that is not continuous or regular, but only occasional or incidental to the employment. The scope and purpose of the hiring are important considerations. Clearly, under the facts, plaintiff's employment was purely casual. The engagement was not for a certain period. It was temporary, and for one occasion only. He had regular employment with another company, and it loaned him for a special and particular service of about three hours' duration; and when that service ended, he intended to return and work for his regular employer. Plaintiff did not know definitely the character of the work he was to do, when he reported for duty to the defendant company. We may say, as was said in *In re Gaynor's Case,* 217 Mass. 86:

"It would be difficult to conceive of employment more nearly casual in every respect than was that of the employee in the case at bar."

Authorities that make a different application of this principle or definition, like the Wisconsin decisions, cannot be followed by this court. We are not unmindful that every cause of action of this character is bottomed on its own facts; but the instant case is ruled by *Herbig v. Walston Auto Co.,* 191 Iowa 394, with cases cited and distinguished. See, also, *Bridger v. Lincoln Feed & Fuel Co.,* (Neb.) 179 N. W. 1020; *Cousineau v. Black,* 206 Mich. 479 (173 N. W. 203); *Uphoff v. Industrial Board,* 271 Ill. 312; *In re Cheever's Case,* 219 Mass. 244; *Chicago G. W. R. Co. v. Industrial Com.,* 284 Ill. 573 (120 N. E. 508).

Other points are argued by appellant, some of which are incidental to the primary proposition discussed herein, while others refer to instructions given by the court and the amount of the verdict based thereon. We find no reversible error in the record.

The damages awarded are not excessive, and the verdict is amply sustained by the evidence. The judgment entered is, therefore,—*Affirmed.*

EVANS, C. J., WEAVER, PRESTON, STEVENS, and FAVILLE, JJ., concur.

ARTHUR, J., dissents.